Electronically FILED by Superior Court of California, County of Los Angeles on 05/06/2019 03:27 PM Sherri R. Carter, Executive Officer/Clerk of Court, by K. Vargas,Deputy Clerk
19STCV15742

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Stuart Rice

MICHAEL N. FEUER, City Attorney (SBN 111529)
JAMES P. CLARK, Chief Deputy City Attorney (SBN 64780)
MICHAEL J. BOSTROM, Assistant City Attorney (SBN 211778)
CONNIE K. CHAN, Deputy City Attorney (SBN 284230)
ADAM R. TEITELBAUM, Deputy City Attorney (SBN 310565)
OFFICE OF THE LOS ANGELES CITY ATTORNEY
200 North Spring Street, 14th Floor
Los Angeles, CA 90012
Telephone: (213) 978-1865
Facsimile: (213) 978-2286
Email: adam.teitelbaum@lacity.org

Attorneys for Plaintiff,
THE PEOPLE OF THE STATE OF CALIFORNIA

*NO FEE – CAL. GOVT. CODE § 6103*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | Case No.: 19STCV15742 |
| Plaintiff, | **COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, AND CIVIL PENALTIES FOR VIOLATIONS OF THE UNFAIR COMPETITION LAW (BUS. & PROF. CODE §§ 17200 *ET SEQ.*)** |
| vs. | |
| H&R BLOCK, INC., a Missouri corporation; HRB DIGITAL LLC, a Delaware limited liability company; and DOES 1-50, inclusive, | |
| Defendants. | |

**INTRODUCTION**

1.      Plaintiff, the People of the State of California (the "People"), by and through Los Angeles City Attorney Michael N. Feuer, brings this action under the California Unfair Competition Law, Business and Professions Code §§ 17200 *et seq.*, against Defendants H&R Block, Inc., HRB Digital LLC, and Does 1 through 50, inclusive (collectively "H&R Block" or "Defendant"), makers of the "H&R Block" electronic tax preparation and filing software. H&R Block has for years defrauded the lowest earning 70 percent of American taxpayers—who are entitled under a private industry agreement with the IRS to file their taxes online for free using commercial products—by actively undermining public access to the IRS's "Free File" program,

1

COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, AND CIVIL PENALTIES

1    while simultaneously employing deceptive and misleading advertising and design schemes
2    intended to induce taxpayers into unnecessarily purchasing expensive H&R Block products.
3    The People seek injunctive relief to stop H&R Block's deceptive business practices, restitution
4    for all Californians who at any time during the four years prior to the filing of this Complaint
5    paid for H&R Block products when they were in fact eligible to file for free under the IRS's
6    "Free File" program, and civil penalties to deter similar conduct in the future.
7          2.     Since 2002, H&R Block and a consortium of electronic tax filing companies
8    have promised to provide a free version of their commercial products to low-income Americans,
9    in exchange for the IRS's commitment to "not compete with the Consortium in providing free,
10   online tax return preparation and filing services to taxpayers."[1]  Under the IRS's "Free File"
11   program, the lowest earning 70 percent of taxpayers based on Adjusted Gross Income ("AGI")
12   (currently anyone with an AGI of $66,000 or less) are eligible to prepare and file their federal
13   tax returns, no matter how complicated, through any of several commercial providers at no cost.
14         3.     But only a tiny fraction of eligible taxpayers actually benefit from the IRS and
15   private industry's "Free File" agreement.  While *more than 100 million taxpayers* were eligible
16   to file for free through the Free File program in fiscal year 2018, fewer than 2.5 million—*less*
17   *than 2.5 percent* of eligible taxpayers—actually did so.
18         4.     This abysmal participation rate is attributable, at least in part, to H&R Block's
19   deliberate efforts to hide the availability of its high-quality Free File product (called H&R Block
20   "Free File"), while at the same time aggressively marketing a "Free" watered-down version of
21   its software that is useless to all but those with very simple tax returns (similarly—and
22   confusingly—called H&R Block "Free Online").  Worse still, after luring low-income
23   consumers to begin preparing their returns with the limited-functionality H&R Block "Free
24   Online" software, and even after those consumers input information revealing themselves to be
25   eligible for H&R Block's full-featured Free File product, H&R Block then manipulates them

26   

27   

28   _____

[1] Internal Revenue Service, "Free Online Electronic Tax Filing Agreement," (Oct. 30, 2002),
sec. II, 67 Fed. Reg. 67,247, 67,249 (Nov. 4, 2002) ("2002 Free File Agreement").

2

COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, AND CIVIL PENALTIES

into paying for product upgrades and upsells—marketing tactics that are specifically prohibited from being used on Free Filers under the terms of the IRS agreement.

5.      These deceptive practices are so critical to H&R Block's business model that H&R Block reduced them to writing.  As recently reported by the nonprofit investigative newsroom ProPublica, H&R Block issued written guidance explicitly instructing its customer service staff: "Do not send clients to this [Free File] Web Site unless they are specifically calling about the Free File program."[2]  That guidance discloses H&R Block's scheme "to send users to [its] paid products before the free product, if at all possible."[3]

6.      As discussed in greater detail below, H&R Block's unfair and deceptive business practices have real world implications.  H&R Block has deceived thousands, if not millions, of low-income consumers into unnecessarily spending sometimes hundreds of dollars on H&R Block products—money that could go toward medical bills, rent payments, or groceries.

## PARTIES

7.      Plaintiff People is the sovereign power of the State of California designated by the Unfair Competition Law, Business and Professions Code §§ 17200 *et seq.* (the "UCL"), to be the complaining party in civil law enforcement actions brought under that statute.  *See* Bus. & Prof. Code § 17204.  The People have an interest in ensuring that the individuals and entities doing business in this state do not deceive consumers, particularly those who are economically disadvantaged and underserved.

8.      Defendant H&R Block, Inc. is a Missouri corporation with its principal place of business in Kansas City, Missouri.  Defendant HRB Digital LLC, a subsidiary of H&R Block, Inc., is a Delaware limited liability company with its principal place of business in Kansas City, Missouri.  H&R Block, Inc. and HRB Digital LLC collectively own and control a series of widely used electronic tax preparation and filing software products and services, including those

_____

[2] Justin Elliott and Paul Kiel, *TurboTax and H&R Block Saw Free Tax Filing as a Threat – and Gutted It*, ProPublica (May 2, 2019), *available at* https://www.propublica.org/article/intuit-turbotax-h-r-block-gutted-free-tax-filing-internal-memo.
[3] *Id.*

offered through https://www.hrblock.com/.  H&R Block, Inc. is a member of the "Free File Alliance," a nonprofit coalition of 12 tax software companies under an agreement with the IRS to provide free electronic tax services to eligible American taxpayers.  In fiscal year 2018, H&R Block, Inc. reported revenue of more than $3 billion, of which more than $2 billion resulted from its consumer-facing business.[4]

9.      The true names and capacities of the defendants sued herein as Does 1 through 50, inclusive, are unknown to the People.  The People therefore sue these defendants by such fictitious names.  When the true names and capacities of these defendants have been ascertained, the People will seek leave of this Court to amend this Complaint to insert in lieu of such fictitious names the true names and capacities of the fictitiously named defendants.  The People are informed and believe, and thereon allege, that these defendants participated in, and in some part are responsible for, the unfair and fraudulent acts alleged herein.  Does 1 through 50 include unknown individuals who conspired with H&R Block concerning the unfair and fraudulent acts alleged herein.  Does 1 through 50 also include agents of H&R Block acting within the course and scope of their duties.  Each reference in this Complaint to H&R Block or Defendant is also a reference to all defendants sued as Does.

10.      The People allege that, in addition to acting on its own behalf, all of the acts and omissions described in this Complaint by Defendant were duly performed by, and attributable to, all defendants, each acting as agent, employee, alter ego, joint enterprise and/or under the direction and control of the others, and such acts and omissions were within the scope of such agency, employment, alter ego, joint enterprise, direction, and/or control.  Any reference in this Complaint to any acts of Defendant shall be deemed to be the acts of each defendant acting individually, jointly, or severally.  At all relevant times, each defendant had knowledge of and agreed to both the objectives and course of action, and took the acts described in this Complaint pursuant to such agreements, resulting in the unfair and fraudulent acts described herein.

//

---

[4] H&R Block, Inc. Annual Report (Form 10-K), at 21, 23 (June 15, 2018).

4

COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, AND CIVIL PENALTIES

<div align="center">

**JURISDICTION AND VENUE**

</div>

11.     This Court has subject matter jurisdiction over this action pursuant to Article VI, section 10 of the California Constitution.

12.     This Court has personal jurisdiction over Defendant because H&R Block purposefully avails itself of California markets by intentionally advertising and selling its online tax preparation products to California residents, thereby taking advantage of the benefits and privileges of the laws of the state of California.

13.     Venue is proper in this Court pursuant to Code of Civil Procedure § 393 because violations of law that occurred in the City and County of Los Angeles are part of the cause upon which the People seek recovery of restitution and penalties imposed by statute.

<div align="center">

**GENERAL ALLEGATIONS**

</div>

**I.     The IRS's Free File Program**

       **A.     To Fight for Its Survival and Stave Off Public Sector Competition, H&R Block Promised to Provide Free Tax Filing Services to Low-Income Americans.**

14.     H&R Block has long been among the leaders in the online tax preparation software industry.  H&R Block prepared more than 5.5 million tax returns through its online services in fiscal year 2018 alone.[5]

15.     In the early 2000s, already facing competitive pressures from various state governments beginning to offer their own free online tax services to state taxpayers, H&R Block was highly motivated to prevent the federal government from doing the same.  As H&R Block later acknowledged in an SEC filing, the threat that "[g]overnment tax authorities … may elect to expand free offerings in the future" "could result in a loss of market share, lower revenues or lower margins."[6]

16.     Ultimately, however, the federal government did not develop its own free online federal tax filing service.  Instead, on October 30, 2002, the IRS entered into the "Free Online

---

[5] H&R Block, Inc. Annual Report (Form 10-K), at 22 (June 15, 2018).
[6] H&R Block, Inc. Annual report (Form 10-K), at 10 (June 29, 2009).

1   Electronic Tax Filing Agreement" ("Free File Agreement") with a consortium of electronic tax

2   preparation companies, including H&R Block, which had organized into a non-profit called the

3   "Free File Alliance, LLC" for purposes of entering into the agreement.[7]

4       17.    Under the terms of the Free File Agreement, which was established pursuant to

5   public rulemaking and published in the Federal Register on November 4, 2002 (67 Fed. Reg.

6   67,247), Free File Alliance members agreed to offer free online tax return preparation and filing

7   services to at least 60 percent of taxpayers in the aggregate—though individual Alliance

8   members remained free to impose their own eligibility criteria, such as based on age, income, or

9   state residency.  In exchange, the IRS pledged to "not compete with the [Free File Alliance] in

10   providing free, online tax return preparation and filing services to taxpayers."[8]

11       18.    In 2005, the IRS and the Free File Alliance renewed the Free File Agreement for

12   another four years, with some modifications.  Most significantly, the 2005 Agreement expanded

13   the scope of guaranteed coverage to the lowest earning 70 percent of taxpayers based on AGI

14   and underscored that, "to serve the greater good and to ensure the long-term stability of the

15   Alliance, the scope of this program is focused on covering the taxpayers least able to afford e-

16   filing their returns on their own."[9]

17       19.    The IRS and the Free File Alliance also entered into a Memorandum of

18   Understanding ("MOU") implementing the Free File Agreement.  The MOU again emphasized

19   the Free File program's objective of providing services to "the taxpayers least able to afford

20   efiling their returns on their own" and reiterated that, "[i]n recognition of this commitment, the

21   federal government has pledged to not enter the tax preparation software and e-filing services

22   marketplace."[10]

23

24

-------------------

25   [7] The Free File Alliance, LLC subsequently changed its name to Free File, Inc.
    [8] 2002 Free File Agreement, sec. II.

26   [9] Internal Revenue Service, "Free Online Electronic Tax Filing Agreement," (Oct. 30, 2005) ("2005 Free File Agreement"), sec. I.C.

27   [10] Internal Revenue Service, "First Memorandum of Understanding on Service Standards and Disputes, Between the Internal Revenue Service and Free File Alliance, LLC," art. II; *see also*

28   Internal Revenue Service, "Seventh Memorandum of Understanding on Service Standards and Disputes, Between the Internal Revenue Service and Free File, Incorporated" ("Seventh MOU"),

COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, AND CIVIL PENALTIES

20.     Since 2005, the Free File Agreement and implementing MOU have been continuously renewed, with some amendments.  The Seventh MOU was effective March 6, 2015 for a five-year term but was superseded by the operative Eighth MOU on October 31, 2018.  The Eighth MOU currently remains in effect and expires October 31, 2021.[11]

21.     Although the Free File program was envisioned to offer free online tax filing services to the lowest-earning 70 percent of Americans, the program has fallen far short of its objectives.  The IRS reported last year that in its entire 16-year existence, only 51.1 million federal tax returns have actually been filed using Free File products, representing only 3 percent of all eligible Free Filers.[12]  In fiscal year 2018, more than 100 million taxpayers were eligible to file for free with Free File products, but only about 2.5 million— *less than 2.5 percent* of eligible taxpayers—actually did so.[13]

22.     H&R Block has been a participant in the Free File program throughout its existence and has a strong commercial interest in keeping the program grossly underutilized and in making the program—in its current anemic form—permanent.

23.     In its Form 10-K annual reports for the fiscal years 2014 and 2015, for example, H&R Block stated that the Free File Alliance "*has kept the federal government from becoming a direct competitor to [H&R Block's] tax service offerings in the U.S.*," while acknowledging that "governmental encroachment at both the U.S. federal and state levels" could "present a

_____

art. 2; Internal Revenue Service, "Eighth Memorandum of Understanding on Service Standards and Disputes, Between the Internal Revenue Service and Free File, Incorporated" ("Eighth MOU"), art. 2.

[11] Throughout this Complaint, the terms "Free File Agreement" and "MOU" refer, respectively, to the operative versions of the Free File Agreement and MOU in effect at the relevant time, while "Free File program" is used to refer to the program as a whole.

[12] *See* Internal Revenue Service, "Tax Time Guide: Try Money-Saving IRS Free File" (Mar. 1, 2018), *available at* https://www.irs.gov/newsroom/tax-time-guide-try-money-saving-irs-free-file; Office of Sen. Elizabeth Warren, "Tax Maze: How the Tax Prep Industry Blocks Government from Making Tax Day Easier" (Apr. 4, 2016) at 1, *available at* https://www.warren.senate.gov/files/documents/Tax_Maze_Report.pdf.

[13] Internal Revenue Service, "National Taxpayer Advocate delivers annual report to Congress: Addresses impact of shutdown; urges more funding for IT modernization" (Feb. 12, 2019), *available at* https://www.irs.gov/newsroom/national-taxpayer-advocate-delivers-annual-report-to-congress-addresses-impact-of-shutdown-urges-more-funding-for-it-modernization.

COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, AND CIVIL PENALTIES

1   continued competitive threat to [H&R Block's] business for the foreseeable future."[14] In more

2   recent Form 10-K annual reports, H&R Block again emphasized the utility of the Free File

3   Alliance in "reduc[ing] the perceived need for government tax service offerings," while

4   highlighting the "competitive threat" of future government encroachment.[15] In its most recent

5   fiscal year 2018 Form 10-K, H&R Block directly acknowledged: "If the Free File program is

6   terminated and the IRS itself provides tax preparation services, the federal government would

7   become our direct competitor, which could potentially have material adverse revenue

8   implications."[16]

9       24.   H&R Block's SEC filings also recognize that increasing the public's use of free

10  tax preparation services—the stated goal of the Free File program—"diminish[es] [H&R

11  Block's] revenue and profitability."[17] Accordingly, one of H&R Block's core objectives is to

12  "ensure the migration of clients from [its] free tax service offerings to those for which [H&R

13  Block] receive[s] fees."[18]

14      25.   In an effort to ensure the continued existence of the Free File program and

15  prevent the federal government from becoming its direct competitor, H&R Block has expended

16  considerable resources lobbying Congress. In 2017 and 2018, H&R Block reportedly spent

17  $6.7 million on Congressional lobbying activities;[19] the bill it lobbied against most frequently

18

19  _____

20

21      [14] H&R Block, Inc. Annual Report (Form 10-K), at 11 (June 17, 2015) (emphasis added);
    H&R Block, Inc. Annual Report (Form 10-K), at 11 (June 19, 2014) (emphasis added).

22      [15] H&R Block, Inc. Annual Report (Form 10-K), at 8 (June 16, 2017); H&R Block, Inc.
    Annual Report (Form 10-K), at 8 (June 17, 2016).

23      [16] H&R Block, Inc. Annual Report (Form 10-K), at 8 (June 15, 2018).

24      [17] H&R Block, Inc. Annual Report (Form 10-K), at 8 (June 15, 2018); H&R Block, Inc.
    Annual Report (Form 10-K), at 7 (June 16, 2017); H&R Block, Inc. Annual Report (Form 10-K),

25  at 8 (June 17, 2016); H&R Block, Inc. Annual Report (Form 10-K), at 11 (June 17, 2015).

26      [18] H&R Block, Inc. Annual Report (Form 10-K), at 8 (June 15, 2018); H&R Block, Inc.
    Annual Report (Form 10-K), at 7 (June 16, 2017); H&R Block, Inc. Annual Report (Form 10-K),
    at 8 (June 17, 2016); H&R Block, Inc. Annual Report (Form 10-K), at 11 (June 17, 2015).

27      [19] OpenSecrets.org, Center for Responsive Politics, "H&R Block Profile for 2018 Election

28  Cycle," https://www.opensecrets.org/orgs/summary.php?cycle=2018&id=D000022016 (last
    accessed May 6, 2019).

COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, AND CIVIL PENALTIES

1   was S. 912, the Tax Filing Simplification Act of 2017,[20] which would prohibit the IRS from

2   entering into agreements, such as the Free File program, that would restrict the IRS from

3   "provid[ing] tax return preparation services or software or to provide tax return filing

4   services."[21]

### B. The Purpose of the Free File Program Is to Maximize Low-Income Taxpayer Access to Free Online Tax Services.

7   26.   The Free File program is intended to implement the IRS's stated public policy of

8   "extending the benefits of online federal tax preparation and electronic filing to economically

9   disadvantaged and underserved populations at no cost to either the individual user or to the

10   public treasury."[22] Article 2 of the MOU unambiguously states that Free File members "shall

11   … [m]ake tax return preparation and filing easier and reduce the burden on individual

12   taxpayers, *particularly the economically disadvantaged and underserved populations*," and

13   shall also "[p]rovide greater service and *access to the [Free File] Services to taxpayers*."[23]

14   27.   This public policy of improving low-income taxpayer access to high-quality

15   commercial products at no cost—and of protecting such vulnerable populations from being

16   misled into unnecessarily paying for such services—is also reflected in several other provisions

17   of the Seventh and Eighth MOUs, the Free File Agreement, and the IRS's responses to public

18   comments published in the Federal Register.

19   //

20   //

21   //

22   //   _____

23

24   [20] OpenSecrets.org, Center for Responsive Politics, "H&R Block Bills lobbied, 2018,"
25   https://www.opensecrets.org/lobby/clientbills.php?id=D000022016&year=2018 (last accessed
     May 6, 2019); OpenSecrets.org, Center for Responsive Politics, "H&R Block Bills lobbied,
26   2017," https://www.opensecrets.org/lobby/clientbills.php?id=D000022016&year=2017 (last
     accessed May 6, 2019).
27   [21] Tax Filing Simplification Act of 2017, S. 912, 115th Cong. § 2 (2017).
     [22] Eighth MOU, art. 2; *see* Seventh MOU, art. 2.
28   [23] Eighth MOU, arts. 2.1, 2.3 (emphases added); Seventh MOU, arts. 2.1, 2.3 (emphases
     added).

9

COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, AND CIVIL PENALTIES

28.     First, the Free File Agreement provides that "[t]he Parties will coordinate with each other their respective marketing of these Free Services to provide uniformity and *maximize public awareness*."[24]

29.     Second, in assuaging public concerns that the Free File program would not "sufficiently protect the interest of taxpayers, specifically low-income taxpayers," the IRS wrote in the Federal Register: "The Agreement … provides that taxpayers will not have to go through additional steps or barriers to access the Free Service, beyond those steps required or imposed to access the comparable paid service."[25]  The IRS further wrote: "It is also expected that Free File Alliance products will be equivalent to those offered for sale on the commercial market and thus are expected to have all of the features and operability of those commercial products."[26]

30.     Third, to further protect Free File-eligible taxpayers from being misled into paying for a product, the MOU imposes specific limitations on Free File Alliance members' sales activities.  For example, the Eighth MOU explicitly prohibits "Other Sales and Selling Activity: No marketing, soliciting, sales or selling activity, or electronic links to such activity, are permitted in the Free File Program," except for state tax returns or where the user proves to be ineligible for the Free File product.[27]

31.     The Eighth MOU similarly provides that "Members shall not include a 'value-added' button (i.e., an icon, link or any functionality that provides a taxpayer with access to a Member's commercial products or services) on the Member's Free File Landing Page."[28] While the Seventh MOU did allow "value-added" buttons to be listed on the bottom of a Free File Landing Page, it also expressly provided that "[t]he Member shall have a prominent link

//

//

_____

[24] 2002 Free File Agreement, sec. VI.A (emphasis added).
[25] IRS' Intent to Enter Into an Agreement With Free File Alliance, LLC (i.e., Free File Alliance), 67 Fed. Reg. 67,247, 67,248 (Nov. 4, 2002).
[26] *Id.*
[27] Eighth MOU, art. 4.32.5; *see* Seventh MOU, art. 4.33.
[28] Eighth MOU, art. 4.32.6.

COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, AND CIVIL PENALTIES

1  permitting taxpayers on a Member's Paid Service Offering Page to easily and clearly return to

2  the Member Free File Landing Page."[29]

3       32.    Both the Seventh and Eighth MOUs also clearly state: "Members shall not post a

4  billing screen requesting or collecting bank/financial information (e.g., debit/credit card

5  information) from customers who qualify for a free return where no state tax return products

6  have been purchased."[30]

7       33.    Finally, the Eighth MOU sets forth specific rules to ensure that consumers who

8  do not qualify for a particular member's Free File product are first redirected to other members'

9  Free File products, for which they might be eligible, before being offered a member's paid

10  products.[31]

11      **II.**     **H&R Block's Business Acts and Practices**

12           **A.**     **H&R Block's Online Products**

13       34.    As part of the IRS Free File program, H&R Block offers a free online tax

14  preparation and filing product called H&R Block "Free File."  Anyone who (i) has an AGI of

15  $66,000 or less and is between the ages of 17 and 51, (ii) is eligible for the Earned Income Tax

16  Credit, or (iii) is on active military duty and has an AGI of $66,000 or less, is eligible to use

17  H&R Block "Free File."

18       35.    H&R Block "Free File" is a robust software offering that enables users to

19  complete and e-file their federal and state tax returns for free, no matter how complicated.

20       36.    But H&R Block "Free File" is not the only free online tax product H&R Block

21  offers.  H&R Block also offers a *different* free online tax product that bears a nearly identical

22  name: H&R Block "Free Online."

23       37.    Notwithstanding the similarity of their names, H&R Block "Free Online" is a

24  very different product from H&R Block "Free File" and has nothing to do with the IRS Free

25

26

27

28

[29] Seventh MOU, art. 4.33.7.
[30] Eighth MOU, art. 4.19.4; Seventh MOU, art. 4.20.4.
[31] Eighth MOU, art. 4.19.2.

File program.  There are no income eligibility restrictions to use H&R Block "Free Online," but the product itself is a very basic software offering that covers *55 fewer* tax forms than H&R Block "Free File."

38.    Those who cannot complete a tax return using H&R Block "Free Online" include a large number of low-income taxpayers, including the growing number of persons working in the "gig economy" and classified (whether rightly or wrongly) by their employer as an "independent contractor" and paid with Form 1099-MISC.  Anyone who owns a home, has a health savings account, owns rental property, has investments, or owns a business (regardless of the size) also cannot complete a tax return with H&R Block "Free Online."

39.    However, if those same taxpayers meet any one of the three income eligibility thresholds for H&R Block "Free File," they can successfully complete their tax return for free using that product regardless of the complexity of the return or the forms required.  Thus, a large number of taxpayers who are unable to complete their tax returns for free using H&R Block "Free Online," due to its highly limited functionality, nonetheless can complete their tax returns for free using H&R Block "Free File," which supports virtually all federal tax forms.

40.    Moreover, H&R Block "Free Online" is not a truly free service, as it charges users $29.99 for each state tax return filed.  However, taxpayers who meet any one of the three income eligibility thresholds for H&R Block "Free File" can file a state tax return for free through that product.

41.    In addition to these two "free" online products, H&R Block also offers three paid online products: "Deluxe Online," starting at $49.99; "Premium Online," starting at $69.99; and "Self-Employed Online," starting at $104.99 (collectively, H&R Block "Paid Products").

**B.    H&R Block Deliberately Makes It Difficult for Consumers to Find H&R Block "Free File," Its Free File Product.**

42.    Although H&R Block offers a Free File product, i.e., H&R Block "Free File," few consumers ever learn about it.

43.    This is by design and, in fact, is driven by H&R Block's written policies.  As recently reported by ProPublica, H&R Block issued written guidance that "explicitly instructs

its customer service staff to push people away from its free offering."[32]  That guidance states: "Do not send clients to this Web Site unless they are specifically calling about the Free File program."[33]  In that guidance, H&R Block further admits:  "we want to send users to our paid products before the free product, if at all possible."[34]

44.     In accordance with that policy, H&R Block "Free File" is neither conspicuously referenced nor linked to anywhere on H&R Block's main website, https://www.hrblock.com/ ("Main Website"), through which H&R Block offers its four other online products.

45.     Instead, H&R Block only offers H&R Block "Free File" through an entirely separate and distinct website, https://www.hrblock.com/ffa/ ("H&R Block Free File Website")—and H&R Block makes it impossible to navigate directly to it from the Main Website.  Given that the top result for a Google search of the terms "h&r block" or "h&r block free" leads to the H&R Block Main Website, it is likely that most consumers never become aware of H&R Block's Free File product at all.

46.     Worse still, during the 2018 tax season (January through April 15, 2019), H&R Block deliberately hid its H&R Block Free File Website from consumers by adding a line of code to the website that prevented it from appearing in any online search results.

47.     H&R Block achieved this level of obscurity by adding the following instruction code on the H&R Block Free File Website: <meta name="robots" content="noindex, nofollow">.  A "robots meta tag" allows a website to control how Google and other search engines make content available through search results.  A robots meta tag of "noindex" instructs search engines, "[d]o not show this page in search results and do not show a 'Cached' link in search results," while a robots meta tag of "nofollow" instructs, "[d]o not follow the links on this page."[35]  According to Google Support for developers, "[i]f you wish to explicitly block a

_____

[32] Justin Elliott and Paul Kiel, *supra.*
[33] *Id.*
[34] *Id.*
[35] Google Search, "Robots meta tag and X-Robots-Tag HTTP header specifications," https://developers.google.com/search/reference/robots_meta_tag (last accessed May 5, 2019).

13

COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, AND CIVIL PENALTIES

page from being indexed, you should … use the noindex robots meta tag," which effectively "guarantee[s] that a page will not appear in results."[36]

48.   After ProPublica exposed H&R Block's deceptive practices in an article published April 26, 2019,[37] H&R Block changed the code on its H&R Block Free File Website so that it is no longer hidden from Google and other search engines.

49.   Upon information and belief, H&R Block also took deliberate steps to steer consumers—including those specifically searching for the IRS Free File program—towards the H&R Block Main Website (with its inferior "Online Free" and costly Paid Products), *not* the H&R Block Free File Website.  Upon information and belief, H&R Block advertised its Main Website by purchasing Google Search Ads (which display at the top of Google search results when triggered by the advertiser's pre-selected keywords), and chose keywords likely to be used by consumers specifically seeking IRS Free File options.[38]  For example, according to a ProPublica report, when journalists searched Google for "irs free file taxes," the second paid ad displayed above search results was a link to the H&R Block Main Website titled "H&R Block® Official Site | Free Federal Tax Filing | HRBlock.com."[39]

//

//

---

[36] Google Search Console Help, "About robots.txt Robots FAQs," https://support.google.com/webmasters/answer/7424835?hl=en (last accessed May 5, 2019).
[37] Justin Elliott, *TurboTax Deliberately Hid Its Free File Page From Search Engines*, ProPublica (Apr. 26, 2019), *available at* https://www.propublica.org/article/turbotax-deliberately-hides-its-free-file-page-from-search-engines.
[38] Google Ads explains, "[k]eywords are phrases that you choose to determine when and where your ad can appear.  They're matched to terms that people search for or web content that they view."  Google, "Keywords," https://support.google.com/google-ads/topic/3119130?hl=en&ref_topic=3119122,3181080,3126923 (last accessed May 5, 2019).  According to Google Ads, "[t]o get your ads to appear when people search for your product or service, the keywords you choose need to match the words or phrases that people search for. … When a customer searches for a term that matches your keyword, your ad can enter an auction to determine if it will show."  Google, "About keywords," https://support.google.com/google-ads/answer/1704371?hl=en&ref_topic=3119131 (last accessed May 5, 2019).
[39] Justin Elliott and Lucas Waldron, *Here's How TurboTax Just Tricked You Into Paying to File Your Taxes*, ProPublica (April 22, 2019), *available at* https://www.propublica.org/article/turbotax-just-tricked-you-into-paying-to-file-your-taxes.

14

COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, AND CIVIL PENALTIES

50.     A former veteran H&R Block employee, as reported by ProPublica, confirmed that steering customers away from the truly free H&R Block "Free File" product is "company policy."[40]

**C.     H&R Block Confuses Consumers by Aggressively Advertising "Free" Tax Services and H&R Block "Free Online," While Suppressing Access to Its Actual Free File Product, H&R Block "Free File."**

51.     While suppressing the accessibility of its Free File product and entirely omitting any conspicuous mention of H&R Block "Free File" from its Main Website or its list of product offerings, H&R Block prominently and ubiquitously advertises "Free" tax services and H&R Block "Free Online," thereby misleading reasonable consumers into believing H&R Block "Free Online" is the *only* free online tax preparation product H&R Block offers and/or believing H&R Block "Free Online" *is* H&R Block's Free File product.  H&R Block further misleads reasonable consumers into believing that if they are unable to complete their tax returns using H&R Block "Free Online" due to its highly limited functionality, their only recourse is to upgrade to one of H&R Block's Paid Products that supports the tax forms they need—even if they are eligible to file for free under the Free File program.

52.     The H&R Block Main Website is the top search result for the Google searches for "h&r block" and "hr block."

53.     At the top of the Main Website homepage is a link to "Ways to File."  That page does not list H&R Block "Free File" as one of the "Ways to File" with H&R Block.

54.     The "Ways to File" page includes a subsection called "I'll do my own taxes." When the consumer selects "View all" within that subsection, the consumer is taken to the "Online Tax Filing" products page, https://www.hrblock.com/online-tax-filing/ ("Online Products Page").  The Online Products Page lists the four H&R Block products discussed above: (1) "Free Online"; (2) "Deluxe Online"; (3) "Premium Online"; and (4) "Self-Employed Online."  The Online Products Page does not list or anywhere mention H&R Block "Free File" or the Free File program.  The Online Products Page also contains a dropdown link titled

---

[40] Justin Elliott and Paul Kiel, *supra.*

COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, AND CIVIL PENALTIES

1  "Compare online tax filing solutions," which lists all of H&R Block's online products *other*

2  *than* the H&R Block "Free File" product.

3      55.    Various sections of the Main Website, including the homepage and the Online

4  Products Page, contain a tool that asks a series of questions and then, based on the consumer's

5  answers to those questions, directs the consumer to a recommended H&R Block product.  On

6  the homepage, that tool is titled "Help me choose."  On the Online Products Page, that tool is

7  prefaced by the text: "Tell us about you, then take on your taxes."

8      56.    Using that tool, if the consumer selects "Own a home" or "Have an HSA," H&R

9  Block recommends the "Deluxe Online" product, which costs $49.99 and up.  If the consumer

10  selects "Freelancer / Contractor," "Have investments," or "Own rentals," H&R Block

11  recommends the "Premium Online" product, which costs $69.99 and up.  If the consumer

12  selects "Self employed" or "Own a business," H&R Block recommends the "Self-Employed

13  Online" product, which costs $104.99 and up.  H&R Block recommends these Paid Products to

14  consumers—in some instances explicitly stating, "[t]his is the right product for your tax

15  situation"—regardless of whether they are eligible to file for free using H&R Block "Free File."

16      57.    Moreover, the page summarizing H&R Block's "Deluxe Online" product

17  describes it as the "[b]est online tax preparation for homeowners, donations & HSAs."

18  Similarly, the page summarizing H&R Block's "Self-Employed Online" product describes it as

19  the "[b]est for self-employed and small business owners."  H&R Block does not disclose that

20  H&R Block "Free File" may in fact be the "[b]est" product for eligible consumers who are

21  homeowners, donate to charities, have HSAs, are self-employed, or are small business owners.

22      58.    Furthermore, if consumers begin filling out their tax information in either H&R

23  Block "Free Online" or one of the Paid Products, and then realize (somehow on their own) that

24  H&R Block "Free Edition" is the "[b]est" product for them, they cannot automatically transfer

25  the information they have already entered into the H&R Block "Free File" product.  Rather, in

26  order to switch from H&R Block "Free Online" or one of the Paid Products accessed from the

27  Main Website to H&R Block "Free File," consumers must sign out of their account entirely, go

28  to the H&R Block Free File Website (which cannot be directly navigated to from the Main

<div align="center">16</div>

<div align="center">COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, AND CIVIL PENALTIES</div>

1   Website), sign in to their account on that site, and then *re-enter* all their personal and tax

2   information anew—yet another barrier H&R Block erects to discourage reasonable consumers

3   from using its Free File product.

4         59.    In addition, the H&R Block Main Website's only references to H&R Block

5   "Free File" are not easy for a reasonable consumer to find.  But even those limited references

6   are misleading and further H&R Block's stated goal of directing consumers to the H&R Block

7   "Free Online" product and away from the H&R Block "Free File" product.  For example, one

8   such support page, https://www.hrblock.com/tax-center/support/online/online-tax-

9   filing/prepare-to-file-taxes-online/free-tax-programs/, describes both products as "allow[ing]

10   you to complete and e-file your return at no cost."  However, the page then emphasizes the "age

11   and income" limitations of the H&R Block "Free File" product without mentioning any of the

12   many limitations of the H&R Block "Free Online" product.  Moreover, that support page links

13   directly to the H&R Block "Free Online" product and encourages consumers to "[g]et started

14   with" that product—a process which, as described below, often misleads consumers into

15   purchasing an H&R Block Paid Product—without providing any direct link to the H&R Block

16   "Free File" product.  That page further confusingly states that "[t]he available forms" for the

17   H&R Block "Free File" product "will depend on whether or not you meet the qualifications set

18   by the IRS," implying that the H&R Block "Free File" product is more complex than it actually

19   is (as noted above, virtually all IRS forms are accepted under H&R Block "Free File" for

20   eligible consumers).

21           **D.**    **H&R Block Uses Further Deceptive Marketing and Design Strategies**

22                   **to Steer Free File-Eligible Consumers Into Unnecessarily Purchasing Paid Products.**

23         60.    While failing to disclose the existence of H&R Block "Free File" anywhere on

24   its Main Website and making it difficult for consumers to find it, H&R Block employs

25   additional deceptive marketing and design tactics that steer consumers—including those who

26   are eligible to prepare and file their returns for free under the IRS's Free File program—into

27   upgrading from H&R Block "Free Online" to one of H&R Block's Paid Products.

28   //

COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, AND CIVIL PENALTIES

**EXHIBIT A**
**Page 26**

61.     For example, the H&R Block Main Website is the top result for Google searches for "h&r block," "hr block," "h&r block free," and "hr block free."  As noted above, the only "free" product advertised on the Main Website is H&R Block "Free Online," and the Main Website contains no conspicuous mention of H&R Block "Free File" or the Free File program.

62.     If a Free File-eligible consumer selects the H&R Block "Free Online" product, she is prompted to create an account and then is asked a series of questions on successive webpages about her personal information and tax situation, including, for example, whether she has "additional income," including any "Self-employment or business income" (reported on Form 1099-MISC, not supported by H&R Block "Free Online").  If a Free File-eligible consumer indicates that she needs to report such income (for example, because her employer classifies her as an independent contractor), the program falsely informs her, "you *need* H&R Block Premium to **finish your taxes**."  (first emphasis added.)  The program further falsely states that "self-employment income … isn't covered in our Free … products."  But for consumers eligible for H&R Block "Free File"—one of H&R Block's "Free … products"—self-employment income *is* covered.  The program never informs consumers of this fact, nor does it ever direct consumers to, or even reference, H&R Block "Free File."

63.     If the consumer upgrades to a Paid Product, she is then prompted to enter her self-employment income.  Even after the consumer enters an amount indicating that she is eligible to file for free using H&R Block "Free File" (e.g. $50,000), at no point does the program inform her of this free H&R Block product.  Indeed, even though the domain name for both the H&R Block Main Website and the H&R Block Free File Website is the same, it is impossible to directly navigate to the latter from the former, and H&R Block "Free File" is not integrated with H&R Block "Free Online" or any of H&R Block's Paid Products.

64.     Throughout its Main Website, H&R Block touts "upfront, transparent pricing" and assures consumers that they will avoid "surprise fees" and will "[k]now [their] price, every step of the way."  Yet, contrary to these assurances, H&R Block repeatedly obfuscates its "Free File" product and directs consumers eligible for that product to its other Paid Products—thus charging a "surprise fee[]" and failing to provide true transparency.

**E.** **H&R Block's Unfair and Fraudulent Business Acts and Practices Deceived Free File-Eligible Consumers Into Purchasing H&R Block's Paid Products and Incurring Unnecessary Fees.**

65. On information and belief, H&R Block's unfair and fraudulent business acts and practices described above caused reasonable consumers eligible for a Free File product to unnecessarily purchase H&R Block Paid Products.

66. ProPublica estimates that U.S. taxpayers eligible for a Free File product spend approximately *$1 billion* per year in unnecessary filing fees.[41]  H&R Block's unfair and fraudulent business practices, as described herein, have no doubt contributed substantially to these taxpayer losses.

67. H&R Block's unfair and fraudulent business practices target the underserved, low-income population that the Free File program was intended to benefit.  H&R Block's victims undoubtedly include the elderly on fixed incomes, families struggling to pay for rent or groceries, workers in the "gig economy" classified by their employers as "independent contractors," and those saddled with medical bills or other debt.  These taxpayers rely on their tax refund—which often amounts to a large percentage of their annual income—to buy groceries, pay bills and debts, and begin saving toward their goals.  As one former H&R Block employee admitted, "[t]he company is making money from the product, and that money is eating into the clients' refund."[42]

68. H&R Block's actions and the resulting harm underscore the need for injunctive relief to ensure H&R Block halts these unfair and deceptive business practices and does not return to these practices in the future, full restitution for all of H&R Block's victims, and substantial civil penalties to punish H&R Block and deter H&R Block and others from engaging in such actions in the future.

---

[41] Tik Root, *Why Are Millions Paying Online Tax Preparation Fees When They Don't Need To?*, ProPublica (June 18, 2018), *available at* https://www.propublica.org/article/free-file-online-tax-preparation-fees-intuit-turbotax-h-r-block.
[42] Justin Elliott and Paul Kiel, *supra.*

COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, AND CIVIL PENALTIES

## FIRST CAUSE OF ACTION

### VIOLATION OF UNFAIR COMPETITION LAW

**(Bus. & Prof. Code §§ 17200 *et seq.*)**

69.    The People incorporate by reference the allegations in all preceding paragraphs as though fully set forth herein.

70.    California's Unfair Competition Law, Bus. & Prof. Code §§ 17200-17210, prohibits any person from engaging in "any unlawful, unfair, or fraudulent business act or practice," or any "unfair, deceptive, untrue or misleading advertising," *id.* § 17200.

71.    H&R Block is a "person" subject to the UCL, pursuant to Business and Professions Code § 17201.

72.    Through the actions alleged herein, H&R Block has engaged, and continues to engage, in unfair and fraudulent business practices in violation of the UCL.

73.    Specifically, H&R Block has engaged in unfair business acts and practices by taking actions to reduce public awareness of and access to H&R Block "Free File" and the Free File program. Such actions violate the terms and spirit of the IRS Free File Agreement and MOU and undermine the public policy goals of the Free File program, to the detriment of low-income taxpayers, the intended third-party beneficiaries thereof. H&R Block's unfair business acts and practices include but are not limited to:

    a.    instructing its employees not to direct consumers to the H&R Block Free File Website unless consumers specifically ask for that product, and further instructing its employees to instead direct users to H&R Block Paid Products;

    b.    adding code to its H&R Block Free File Website that prevents it from appearing in online search results, rendering the site non-discoverable by consumers searching on Google or other search engines;

    c.    upon information and belief, associating its Google Search Ads for its Paid Products with keywords likely to be used by consumers searching for the IRS Free File program;

COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, AND CIVIL PENALTIES

d.   making it impossible to directly navigate from the H&R Block Main Website to the H&R Block Free File Website;

e.   deliberately choosing not to inform H&R Block customers of H&R Block's Free File product, H&R Block "Free File," even after they share information with H&R Block indicating their eligibility for that product; and

f.   deterring consumers who have already begun using H&R Block "Free Online" or one of the Paid Products from switching to H&R Block "Free File," even after realizing (somehow on their own) that they are eligible, by making the switching process unduly burdensome (i.e., requiring such consumers to re-enter all their tax information anew on a different website), especially in comparison to the seamless process of upgrading to a Paid Product (in which H&R Block transfers all information automatically).

74.   H&R Block has also engaged in unfair, fraudulent, and deceptive business acts and practices by making misrepresentations likely to deceive reasonable consumers.  Such actions violate the terms and spirit of the IRS Free File Agreement and MOU and undermine the public policy goals of the Free File program, to the detriment of low-income taxpayers, the intended third-party beneficiaries thereof.  H&R Block's unfair, fraudulent, and deceptive business acts and practices include but are not limited to:

a.   intentionally obscuring, and failing to disclose, the differences between H&R Block "Free File" and H&R Block "Free Online," knowing that consumers are likely to confuse these two products with nearly identical names;

b.   failing to conspicuously disclose the existence of H&R Block "Free File" or the Free File program anywhere on its H&R Block Main Website;

c.   providing a misleading comparison of the H&R Block "Free File" product and the H&R Block "Free Online" product, including by

1  emphasizing the eligibility limitations of the former without disclosing

2  the eligibility limitations of the latter;

3     d.  misrepresenting to consumers that H&R Block "Free Online," "Deluxe

4  Online," "Premium Online," and "Self-Employed Online" are the only

5  "Ways to File" online with H&R Block, when in fact H&R Block "Free

6  File" is a fifth way to file online offered by H&R Block;

7     e.  misrepresenting to Free File-eligible consumers that H&R Block will

8  "help [them] choose" the right product for their tax situation;

9     f.  misrepresenting to Free File-eligible consumers that a particular Paid

10  Product is the "[b]est" product or the "right product for [their] tax

11  situation";

12     g.  misrepresenting to Free File-eligible consumers who enter tax

13  information unsupported by H&R Block "Free Online" that they will

14  "need" to purchase an H&R Block Paid Product to complete and file their

15  return;

16     h.  misrepresenting to Free File-eligible consumers that certain forms are not

17  "covered in our Free … products," when in fact virtually all IRS forms

18  are accepted under H&R Block "Free File" for eligible consumers; and

19     i.  misrepresenting to Free File-eligible consumers that H&R Block would

20  provide them "upfront, transparent pricing" and would not charge them

21  "surprise fees," when in fact H&R Block failed to clearly and

22  conspicuously explain to consumers the pricing and functionality of *all* of

23  its products (including H&R Block "Free File") and ultimately charged

24  consumers for services that they should have received (but did not know

25  they could receive) for free.

26     75.  Additionally, H&R Block has engaged in unfair, fraudulent, and deceptive

27  business acts and practices by employing deceptive and manipulative marketing and product

28  design schemes likely to deceive reasonable consumers.  Such actions violate the terms and

<div align="center">22</div>

<div align="center">COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, AND CIVIL PENALTIES</div>

1  spirit of the IRS Free File Agreement and MOU and undermine the public policy goals of the

2  Free File program, to the detriment of low-income taxpayers, the intended third-party

3  beneficiaries thereof. H&R Block's unfair, fraudulent, and deceptive business acts and

4  practices include but are not limited to:

5      a.    instructing its customer service staff not to direct consumers to the H&R

6          Block Free File Website unless they specifically ask for it, and instead to

7          direct users to H&R Block Paid Products;

8      b.    adding code to its H&R Block Free File Website that prevents it from

9          appearing in online search results, rendering the site non-discoverable by

10          consumers searching for it on Google or other search engines;

11      c.    upon information and belief, associating its Google Search Ads for its

12          Paid Products with keywords likely to be used by consumers searching

13          for the IRS Free File program;

14      d.    advertising "free" tax filing services when in fact only a small percentage

15          of consumers are able to complete their tax returns for free on the H&R

16          Block Main Website;

17      e.    heavily marketing H&R Block "Free Online," an inferior product with

18          highly limited functionality, in a manner that makes it likely to be

19          confused with H&R Block "Free File," a robust product that supports

20          virtually all tax situations; and

21      f.    requiring consumers to invest substantial time and effort inputting their

22          tax return information through the H&R Block "Free Online" software

23          before alerting them that they cannot complete their returns using "Free

24          Online," and then manipulating them into paying for various product

25          upgrades.

26                 **PRAYER FOR RELIEF**

27      WHEREFORE, the People respectfully pray for judgment and relief as follows:

28

1.    Preliminary and permanent injunctive relief enjoining H&R Block, together with its successors and assigns and all persons acting in concert with them or on their behalf, from engaging in any of the unfair and fraudulent business acts and practices described herein, pursuant to Business and Professions Code § 17203;

2.    Restitution of all moneys paid to H&R Block for electronic tax preparation and filing services at any time during the period starting four years before the filing of this Complaint, up to and including the date of judgment in this action, by persons in the State of California who were eligible at the time of payment to file for free under any IRS Free File program, pursuant to Business and Professions Code § 17203, including prejudgment interest;

3.    Civil penalties of up to $2,500 assessed against H&R Block for each violation of the UCL, according to proof, pursuant to Business and Professions Code § 17206(a);

4.    Additional civil penalties of up to $2,500 assessed against H&R Block for each violation of the UCL perpetrated against a senior citizen or disabled person, according to proof, pursuant to Business and Professions Code § 17206.1(a);

5.    That the People recover the costs of this action; and

6.    That the People be granted such other and further relief as the Court deems just and proper.

Dated: May 6, 2019                           Respectfully submitted,

MICHAEL N. FEUER, City Attorney
JAMES P. CLARK, Chief Deputy City Attorney
MICHAEL J. BOSTROM, Assistant City Attorney
CONNIE K. CHAN, Deputy City Attorney
ADAM R. TEITELBAUM, Deputy City Attorney
OFFICE OF THE LOS ANGELES CITY ATTORNEY
AFFIRMATIVE LITIGATION DIVISION


By:_____
     ADAM R. TEITELBAUM
     Attorneys for Plaintiff,
     THE PEOPLE OF THE STATE OF CALIFORNIA

24
COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, AND CIVIL PENALTIES